IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| SHARON MCCORMICK, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | CASE NO. 3:08-cv-927-MEF |
| ) | |
| THE FRESENIUS MEDICAL CARE ) | |
| NORTH AMERICA SHORT & LONG ) | |
| TERM DISABILITY PLAN, ) | (WO-Do Not Publish) |
| ) | |
| DEFENDANT. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sharon McCormick ("McCormick") filed this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") as an appeal of the decision by the Defendant The Fresenius Medical Care North America Short & Long Term Disability Plan ("the Plan") to discontinue long-term disability ("LTD") benefits. This cause is before the Court on the Defendant's Motion for Summary Judgment (Doc. # 33) filed on October 23, 2009. The Court has carefully considered the submissions in support of and in opposition to the motion as well as the applicable law. For the reasons set forth below, the Court finds that the motion is due to be GRANTED.

**JURISDICTION AND VENUE**

Jurisdiction over this matter is asserted pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1132 (diversity). While it was not invoked by McCormick, the Court notes that 29 U.S.C. §1132(e)(1) (ERISA) also provides a basis for this Court to

exercise subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue, and the Court finds sufficient evidentiary support for both in this Court.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). According to the Supreme Court, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quotation omitted). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

After the movant satisfies this requirement, the burden shifts to "the adverse party [who] must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quotation omitted). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment." *Id.* at 247-48. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The Eleventh Circuit Court of Appeals has held that "[a]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable." *Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir. 1985) (citation omitted).

## FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion for summary judgment. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts.

McCormick worked as a dialysis nurse for Fresenius Medical Care North America ("Fresenius") from 1991 through 1996 and from 2000 through February of 2004. By virtue of her employment, McCormick was a participant in the Plan. The benefits provided to participants in the Plan are set forth in governing plan documents.

The Plan provides LTD benefits for plan participants who provide evidence that they qualify as "disabled" as that term is defined by the Plan. To qualify as disabled "during the first 24 months of disability (including the LTD Elimination Period), the Covered Person [must be] unable to perform all of the material and substantial duties of his or her occupation

3

on an Active Employment basis because of an Injury or Sickness..." In order to remain eligible for LTD benefits after the initial twenty-four month period, the participant must provide evidence that she is "unable to perform, with reasonable continuity, all of the material and substantial duties of his or her own *or any other occupation* for which he or she is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity."

It is undisputed that the Plan Administrator was vested with full discretionary authority to make decisions with regard to claims for benefits under the Plan. Specifically, the Plan provides that:

> [t]he Plan Administrator, any claims administrator, and any agent of either, shall exercise their responsibilities and authority in carrying out their duties under this claims procedure as fiduciaries of the Plan and, in such capacity, shall have the discretionary authority and responsibility (1) to interpret and construe the Plan and any rules or regulations under the Plan, (2) to determine the eligibility of employees to participate in the Plan, and the rights of claimants to receive benefits under the Plan, and (3) to make factual determinations in connection with any of the foregoing. Any such administrator may, in its discretion, determine to hold a hearing or hearings in carrying out its responsibilities and authority under this claims procedure.

Under the Plan Documents, McCormick's employer is defined as the Plan Administrator and Liberty Life Assurance Company of Boston ("Liberty Life") is the Claims Administrator.

In December of 2003, McCormick submitted a claim for LTD benefits to the Plan. In support of her claim, McCormick stated that she had severe back pain and other pain,

fibromyalgia, diabetes, and hypertension and that she had been unable to work since August 26, 2003. McCormick authorized the release of her medical records to substantiate the claim. Based on a review of the information McCormick submitted and her medical records, Liberty Life determined that McCormick qualified as disabled as that term is defined in the Plan and approved her initial claim for LTD benefits.

Liberty Life notified McCormick of its decision in a letter dated February 9, 2004. This letter explained that McCormick would begin receiving benefits on February 22, 2004. It further explained that for the first twenty-four months, her disability would be evaluated relative to her inability to perform the material and substantial duties of her own occupation, but that thereafter her disability would be evaluated relative to her inability to perform her own or any other occupation for which she had the training, education, or experience.[1] It is undisputed that McCormick received the LTD benefits payments beginning in February of 2004 and that she received them until they were discontinued on March 21, 2006. In a letter dated December 20, 2005, Liberty Life sent McCormick a letter indicating that her continued LTD benefit eligibility after the initial twenty-four months was being evaluated and that she would need to provide information from her treating physicians.

In a letter dated March 1, 2006, Liberty Life notified McCormick that a decision had not yet been made concerning her eligibility for benefits beyond the initial twenty-four

---

[1] It is undisputed that McCormick from the filing of her claim until the present, McCormick is unable to perform the material and substantial duties of her own occupation as a general duty nurse for Fresenius.

5

months, but that she would continue to receive LTD benefits until a decision was made. Liberty Life also explained that it would need McCormick to complete a Functional Capabilities Evaluation ("FCE").

On March 7, 2006, McCormick participated in an FCE with a Rheumatology specialist named Dr. Christopher Adams ("Dr. Adams").[2] The results of the FCE showed that McCormick had the ability to engage in activities that allow her to alternate between sitting and standing. Dr. Adams opined that McCormick was able to safely meet the physical demands for light work and that she demonstrated good functional capacities abilities and physical endurance for work that alternates between walking/standing and sitting. He further found that her functional capacities and training would allow her to work in restricted categories of nursing such as a school nurse, an infection control nurse, a nursing educator, an office nurse, and an occupational health nurse, but that she could not meet the physical demands of general duty nursing. The FCE noted that McCormick's perception of her pain and impairment was that she was "crippled," but that conclusion was incongruous with her actual functional abilities demonstrated during the FCE.

Liberty Life reviewed records from a number of sources concerning McCormick's condition. It reviewed the March 7, 2006 FCE from Dr. Adams and Dr. Adam's office notes for McCormick from July through September of 2005. It also reviewed office notes from McCormick's September 6, 2005 visit to Dr. Cousins. It reviewed the records from Dr.

---

[2] Dr. Adams is one of McCormick's treating physicians.

Carlos Wise ("Dr. Wise") from September through December of 2005[3] and the January 12, 2006 FCE Dr. Wise conducted.[4] Based on its review of this information, Liberty Life concluded that McCormick had the ability to perform with reasonable continuity, all of the material and substantial duties of an occupation that was sedentary or required light physical exertion. Furthermore, it found that based on her training, education, experience, and physical restrictions, she had the ability to perform four different nursing occupations: a school nurse, a nurse case manager, a telephonic triage nurse, and an office nurse in a medical practice. Accordingly, Liberty Life notified McCormick, in a letter dated March 21, 2006, that she no longer qualified as disabled under the Plan and that her LTD benefits would be discontinued.

On December 12, 2003, McCormick had applied for disability benefits from the Social Security Administration. Initially, her claim was denied. On March 16, 2006, McCormick had a hearing on her claim. On March 22, 2006, an Administrative Law Judge for the Social Security Administration found that McCormick was disabled as of August 25, 2003 because of inflammatory arthritis, hypothyroidism, bilateral carpal tunnel syndrome, degenerative joint disease, and status post cervical fusion with residual neck pain so severe

---

[3] Dr. Wise is a family practitioner. He began treating McCormick in 2004.

[4] In his FCE of McCormick, Dr. Wise opined that she would never be able to return to work, although he does not specify if he means as a general duty nurse or in any nursing related position. He bases his conclusion on a diagnosis of fibromyalgia and neuropathy and findings that she suffered diffuse muscle and joint pain.

7

that the combination of her impairments medically equaled the requirements of the Listing 14.09 in the Social Security Administration's Listing of Impairments. The Administrative Law Judge indicated that she was basing this conclusion of the testimony of Dr. James Anderson.

By a letter dated May 30, 2006, McCormick asked Liberty Life to reconsider its decision.[5] McCormick complained that the March 2006 FEC conducted by Dr. Adams was flawed because it was not conducted over more than one day. She explained that she had been uncharacteristically pain free on the date of the March 2006 FEC, but that she had suffered severe pain and muscle spasms after completing the FEC. She stated that she continued to experience pain in her back and hip from the date of the March FCE to the date of her May appeal. She argued that the light duty nursing jobs for which she was found to be qualified did not exist within her immediate geographic area. She complained that the opinions of her treating physicians had been disregarded. She outlined continued health problems from which she suffered. She noted that the Social Security Administration had found her to be totally disabled. McCormick also submitted a letter from Dr. Adams dated April 20, 2006 in support of her appeal.

In the April 20, 2006 letter, Dr. Adams explained that he had seen McCormick on that date and that she had stated that she felt terrible after the March 7, 2006 FCE at Dr. Adams' office. McCormick completed a health assessment questionnaire on April 20, 2006 that

---

[5] The Plan directs participants to appeal adverse benefit decisions first to Liberty Life.

showed considerable deterioration in her assessment of her ability to climb stairs, get up from a chair, touch her feet while seated, reach behind her back, engage in leisure activities, dress herself, and open a carton. Based on the deterioration McCormick reported, Dr. Adams opined that she was not capable of meaningful gainful employment.

Liberty Life acknowledged receipt of McCormick's appeal in June of 2006. It referred her claim to MLS National Medical Evaluation Services, Inc. ("MLS") for further review. MLS referred the claim to Dr. Eric Beck, a physician Board Certified in Physical Medicine and Rehabilitation, Pain Management, and Electrodiagnostic Medicine for independent medical review. Dr. Beck reviewed medical records for McCormick from May of 1998 through March of 2006 from a variety of sources. He also reviewed Dr. Adams' April 20, 2006 letter to Liberty Life.[6] Dr. Beck made attempts to reach Dr. Adams to discuss McCormick with him, but was only able to leave messages to which Dr. Adams did not respond. Dr. Beck completed his review of the file and delivered an Independent Peer Review Report to Liberty Life on July 20, 2006. Dr. Beck concluded that McCormick had a number of documented musculoskeletal conditions resulting in functional impairment. The functional impairment permanently restrict McCormick's ability to bend, stoop, twist, push, pull, do overhead work, squat, crouch, stand, walk, and climb. Dr. Beck found the March 2006 FCE to be valid and acknowledged that while McCormick faced restrictions she could

---

[6] He does not appear to have reviewed a copy of Dr. Wise's letter of July 12, 2006, which was not received by Liberty Life until well after the date of the completion of Dr. Beck's report on July 31, 2006.

9

alternate between walking, sitting, and standing.

McCormick continued to see her treating physicians while her appeal was pending. Dr. Wise dictated a letter on July 12, 2006 in which he indicated that he had been treating McCormick for the following diagnoses: severe degenerative arthritis (wide spread), fibromyalgia, hypertension, diastolic cardiac dysfunction, gastroesophageal reflux disease, hypothyroidism, severe chronic neck and back pain with cervical radiculopathy (status post diskectomy), and bilateral carpal tunnel syndrome (status post bilateral carpal tunnel release procedure). Dr. Wise opined that it was his medical opinion that McCormick is not able to return to work as she is trained only as a registered nurse and not of an age where she would be marketable for new or gainful employment. He also outlined the numerous ways in which her health problems interfered with her ability to work as a registered nurse or even comply with the continuing education requirements for licensing as a nurse. Liberty Life appears to have received this letter on July 31, 2006, but it does not appear to have been delivered to the appeals division until August 3, 2006, two days after Liberty Life had drafted its letter to McCormick addressing her appeal.

Liberty Life considered McCormick's medical records, Dr. Beck's independent evaluation of McCormick's medical records, and the documents McCormick submitted in support of her appeal. Ultimately, it decided to affirm its decision to discontinue her LTD benefits. By a letter dated August 1, 2006, Liberty Life communicated this decision to McCormick and again noted that it had identified four occupations that McCormick had the

ability to perform. Liberty Life informed McCormick that she had the right to appeal its decision to her employer, Fresenius.

On November 29, 2006, McCormick wrote a letter to Fresenius appealing Liberty's Life's decision to discontinue her LTD Benefits and asking Fresenius to help her get her benefits back. She stated that she was willing to take another FCE, but only if it is one that is complete. She explained what she perceived as deficiencies in the FCE performed in March of 2006. She explained the difficulties she had after that FCE. She outlined her recent unsuccessful efforts to work part time taking care of a woman who needed assistance or her infant grandchild. She also explained that the Social Security Administration had awarded her disability payments.

Fresenius received this appeal letter on December 8, 2006. It referred McCormick's claims to its Employee Benefits Review Committee ("the Committee"). The Committee then forwarded the file to Best Doctors, Inc. for independent review. Best Doctors, Inc. assigned that review to Dr. Phillip Mease ("Dr. Mease"), a Clinical Professor at the University of Washington and the Chief of Rheumatology Clinical Research Division of Swedish Hospital in Seattle, Washington. Dr. Mease reviewed McCormick's medical records with an eye to determining whether McCormick was disabled from all work, whether her March 2006 FCE was a valid measure of her disability, and whether her use of opioids for her conditions

would exclude her from gainful employment.[7]  Dr. Mease found that the FCE and the independent medical review by Dr. Beck were probably reasonably accurate in indicating that McCormick is not totally disabled, but does have significant reasons for partial disability and functional limitation.  He suggests that with reasonable accommodations and limitations she could work, but acknowledged that positions might not be available in her immediate job market.  He opined that some, but not all employers would not accept the use of opioids.

Based on the administrative records, including McCormick's medical records, Dr. Beck's independent review report, and Dr. Mease's independent review report, the Committee concluded that McCormick's medical condition did not prevent her from performing the material and substantial duties of the four identified occupations: school nurse, nurse case manager, telephonic triage nurse, and office nurse in a medical practice.  Consequently, it found that she did not meet the Plan definition of disabled for purposes of eligibility for benefits beyond the initial twenty-four months.  Fresenius notified McCormick of its decision by a letter dated September 10, 2007.

On November 24, 2008, McCormick filed suit against Liberty Life, alleging that its decision to discontinue her LTD benefits was a violation of ERISA.  On February 12, 2009, McCormick amended her complaint to assert her claims against the Plan.  Specifically, she alleges that the Plan's decision to discontinue her LTD benefits was arbitrary and capricious.

---

[7] It appears that the review completed by Best Doctors, Inc. included review of the letter from Dr. Wise dated July 12, 2006 and the letter from Dr. Adams dated April 20, 2006.

The Plan answered and denied that its decision was arbitrary and capricious. Rather, it contends that McCormick's benefits were discontinued because she was not disabled as defined by the Plan. The Plan seeks summary judgment on McCormick's claim.

## DISCUSSION

ERISA permits a person denied benefits under an employee benefit plan to challenge that denial in federal court. *See* 29 U.S.C. § 1132(a)(1)(B). In an ERISA plan participant's challenge to the decision of an ERISA plan administrator to deny plan benefits courts in this circuit apply a multi-step analysis:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

*See Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352, 1356 (11th Cir. 2008) (upholding a district court's analysis following the above steps after *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343) (2008). The existence of a conflict of interest for the administrator

13

should be taken into account when determining whether an administrator's decision was arbitrary and capricious. *See Doyle*, 542 F3d at 1360.

In performing the *de novo* review, a court must first turn to the plan itself because a plan administrator must discharge its duties with respect to a plan in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA. *See* 29 U.S.C. § 1104(a)(1)(D). The parties to this action agree that under the Plan the determination of eligibility for LTD benefits beyond the initial twenty-four months required an assessment of McCormick's ability to perform, with reasonable continuity, all of the material and substantial duties of her own or any other occupation for which she is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity. Under the first step of the analysis, a court may only properly consider the record that was before the administrator when it made its decision. *See Glazer v. Reliance Std. Life Ins.*, 524 F.3d 1241, 1247 (11th Cir. 2008).

Throughout her administrative appeals and in her submissions in opposition to the Plan's motion, McCormick relies on the fact that the Social Security Administration has determined that she is entitled to disability benefits as evidence that the decision under the Plan to terminate her benefits was erroneous. The Social Security Administration's determination that an individual is or is not disabled under its statutes and regulations does not dictate whether that same individual is disabled under the terms of an ERISA policy. *See Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1314 n.8 (11th Cir. 1999) ("We note that the

approval of disability benefits by the Social Security Administration is not considered dispositive on the issue of whether a claimant satisfies the requirement for disability under an ERISA-covered plan."). Although the court may consider the award in reviewing an ERISA administrator's decision, *Kirwan v. Marriott Corp.*, 10 F.3d 784, 790 n.32 (11th Cir. 1994), the court is not bound to do so. Given the record before this Court, the Court is not persuaded that the Social Security Administration's determination that McCormick is entitled to disability benefits establishes or even suggests that the decision to deny her further LTD benefits under the Plan was *de novo* wrong. Indeed, when all information in the record is considered, the Court cannot find that this decision to deny benefits was *de novo* wrong. For this reason alone, the Court finds that the Plan is entitled to judgment as a matter of law. Nevertheless, the Court finds, in the alternative, that even assuming *arguendo* that the denial of benefits under the Plan was *de novo* wrong, the Plan is still entitled to judgment as a matter of law because the decision was not without a reasonable basis and was not arbitrary and capricious for the reasons set forth below.

Where, as here, an ERISA plan endows the plan administrator with discretion to determine eligibility for plan benefits, courts must review the administrator's decision under a deferential standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989). A reviewing court will reverse the plan administrator's decision only if it was arbitrary and capricious. *Paramore v. Delta Air Lines*, 129 F.3d 1446, 1449 (11th Cir. 1997). This means that the Court must inquire as to whether the plan administrator's decision had a reasonable

basis. The parties do not dispute that this is the proper standard.

McCormick contends that the denial of her LTD benefit's claim is without a reasonable basis because Liberty Life and Fresenius ignored the uncontroverted opinions of her treating physicians that she is disabled and unable to return to work.[8] Specifically, she points to the July 12, 2006 letter from Dr. Wise, the FCE form Dr. Wise completed in December of 2005, and the April 20, 2006 letter to Liberty Life from Dr. Adams. The United States Supreme Court has held, however, that a plan administrator has no obligation to give a treating physician's opinion more weight. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003). Here, the opinions of the two treating physicians upon which McCormick relies are conclusory and fail to provide adequate basis for the conclusion that McCormick is unable to work. Moreover, Dr. Adams, the very physician who performed the detailed March 2006 FCE did not indicate that he had retested McCormick and observed measurable change in her condition. Instead, he administered a questionnaire and noted that McCormick's own self-reported assessment was that her condition had worsened. Thereafter, he failed to respond to inquiries by the doctor performing an independent peer review. In contrast, the March 2006 FCE Dr. Adams completed explained why McCormick was capable of some level of work.

After securing an independent peer review and reviewing all of the available medical

---

[8] For the reasons outline in the Plan's reply brief, the cases upon which McCormick relies in her brief in opposition do not support the conclusion she urges here.

information on McCormick, Liberty Life determined that she was not disabled within the Plan's definition. After McCormick appealed, Fresenius obtained yet another independent peer review and considered all of the available medical information. Although these decisions were made in the face of conflicting medical evidence, there exists a reasonable basis for the determination that McCormick is able to work in several types of nursing positions. This determination necessarily rests in large part on the March 2006 FCE, but the independent medical experts who assessed the file both opined that it was a reasonable or valid assessment of her condition and restrictions. The decision regarding McCormick's LTD benefits was not arbitrary and capricious as a matter of law as it is supported by reliable evidence in the Administrative Record. Accordingly, the Court will affirm the decision to deny McCormick's benefits and grant the Plan's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

(1) Defendant's Motion for Summary Judgment (Doc. # 33) is GRANTED.

(2) The pretrial and the trial scheduled in this matter are CANCELLED.

(3) A separate final judgment will be entered taxing costs.

DONE this the 4th day of January, 2010.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE